# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LITTON LOAN SERVICING, L.P., *et al.*, | Case No. 1:19-cv-03005 |
| Appellants and Cross-Appellees, | Appeal from Bankr. Ct. No. 19-01088 |
| v. | Judge J. Philip Calabrese |
| DENNIS SCHUBERT, *et al.*, | |
| Appellees and Cross-Appellants. | |

## OPINION AND ORDER

In this bankruptcy appeal, Litton Loan Servicing, L.P., Ocwen Financial Corporation, and JPMorgan Chase Bank, N.A., (collectively, "Creditors") appeal the bankruptcy court's December 2019 judgment, arguing that the court improperly: (1) granted the abandonment motion of Dennis and Sue Schubert ("Debtors"); and (2) abstained under 28 U.S.C. § 1349(c) from considering Creditors' claim for an injunction. Debtors cross-appeal, arguing that the bankruptcy court improperly exercised jurisdiction over Creditors' adversary proceeding because they lacked standing. On each issue, the Court **AFFIRMS** the judgment of the bankruptcy court.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are largely undisputed. In 2000, Debtors executed a promissory note secured by a mortgage, payable to Bank One, N.A., in connection with a $128,600 loan to purchase real estate from Mr. Schubert's father. (ECF No. 9-1, PageID #101–02.) Litton Loan Servicing serviced that loan at the time of issue. (*Id.*, ¶ 2,

PageID #102.) In July 2004, Bank One assigned the loan, including the mortgage, to Wachovia Bank as the trustee for registered holders of certain bundled mortgages; and Ocwen Loan Servicing acquired Litton and took over servicing the loan. (*Id.*, ¶ 3, PageID #102.) Later, U.S. Bank replaced Wachovia as trustee for the bundled mortgages. (*Id.*)

### A.  Debtors' Bankruptcy

In July 2003, Debtors filed a voluntary petition for bankruptcy under Chapter 13. (*Id.*, ¶ 5, PageID# 102.) About a month later, they filed amended schedules and an amended bankruptcy plan, identifying the property and Litton Loan as the servicer. (*Id.*, ¶ 6, PageID #102–03.) At the time, the plan identified $5,081 in arrearages due on the loan, including accrued fees for late payments. (*Id.*) The plan required Debtors to identify their assets and liabilities and to provide other information, including a list of any "contingent and unliquidated claims of every nature" such as "tax refunds, counterclaims" or any "rights to setoff claims." (*Id.*) Debtors did not list any claims, counterclaims, or rights to setoff then or at any point during the bankruptcy. (*Id.*, ¶ 7–9, PageID #103.)

In September 2004, Bank One filed its first proof of claim, stating the principal balance owed on the loan, monthly payment amounts, details of the arrearages, and attached copies of the loan and mortgage documents. (*Id.*, ¶ 12, PageID #103.) The proof of claim also asserted that Debtors missed five monthly payments worth $6,048.80 and owed $302.45 in late fees. (*Id.*, ¶ 13, PageID #104.) After crediting Debtors for amounts held in suspense, Bank One claimed $5,197.57 in arrearages. (*Id.*, ¶ 15, PageID #104.)

2

That November, the bankruptcy court confirmed Debtors' amended Chapter 13 plan. (*Id.*, ¶ 16, PageID #104.) That confirmation order did not preserve any cause of action, counterclaim, or right of setoff between Debtors and any other entity, including Creditors. (*Id.*) Notably, the plan identified $5,081.00 in arrearages—as opposed to the $ 5,197.57 claimed by Bank One—with no interest rate or fixed payment amount indicated. (*Id.*, ¶ 17, PageID #104.)

In September 2006, Debtors completed their Chapter 13 plan and emerged from bankruptcy. (*Id.*, ¶ 20, PageID #105.) In the final accounting and report to the Court, the trustee confirmed that Debtors had fully paid the $5,197.57 in arrearages that Bank One claimed. (*Id.*, ¶ 21, PageID #105.) The bankruptcy court entered its final decree and closed the bankruptcy estate in December 2006. (*Id.*, ¶ 22, PageID #105.)

### B. The State Court Claims

Four years later, at the end of 2010, U.S. Bank filed a foreclosure action in State court against Debtors for failing to make their agreed-to monthly mortgage payments. (*Id.*, ¶ 25, PageID #106.) In 2013, after answering and amending several times, Debtors filed their fourth amended answer and counterclaims against U.S. Bank, Ocwen, Litton Loan, and Chase. (*Id.*) Debtors counterclaimed, on behalf of themselves and all others similarly situated, alleging that, between 2000 and 2004, Litton Loan and Ocwen charged late-payment fees greater than what the loan permitted—a breach of contract—which Debtors maintain ultimately benefitted U.S. Bank and Chase. (*Id.*, ¶ 32, PageID #106; *see also id.*, PageID #122–38.) Debtors also raised counterclaims related to the foreclosure, including wrongful foreclosure,

violations of the Real Estate Settlement Procedures Act of 1974 and the Fair Debt Collection Practices Act, intentional infliction of emotional distress, negligence, gross negligence, "multiple mortgage servicing abuses," and breach of good faith. (*See id.*, PageID #117–21.)

The State court severed and stayed the putative class-action counterclaim but permitted the foreclosure and other counterclaims to go to trial. (*Id.*, ¶ 33, PageID #106.) The State trial court issued a judgment of foreclosure for U.S. Bank and Ocwen and dismissed the outstanding counterclaims. (*Id.*, PageID #234–36.) As for the class-action counterclaim, the parties agreed that a stay was appropriate pending appeal. (*Id.*, PageID #237–38.) On September 5, 2017, the State appellate court affirmed the trial court's foreclosure decision, leaving only the class-action counterclaim for breach of contract intact.

In June 2019, Litton Loan and Ocwen moved to dismiss that counterclaim for lack of subject matter jurisdiction. In August, Debtors opposed that motion and requested more time so they could reopen their Chapter 13 proceeding and seek abandonment of their claims (they had already moved the bankruptcy court to reopen in July 2019). (*Schubert* ECF No. 50.[1]) The State court again stayed the case pending the resolution of Debtors' motion in the bankruptcy court.

---

[1] For citation purposes, the Court refers to the docket in the core bankruptcy case, *In Re Schubert*, No. 03-19024 (Bankr. N.D. Ohio), as *Schubert*. The Court cites the record in the adversary proceeding, *Litton Loan Servicing, L.P., et al. v. Schubert*, No. 19-01088 (Bankr. N.D. Ohio), as *Litton*.

4

### C. Reopening the Bankruptcy and the Adversary Proceeding

On September 9, 2019, the bankruptcy court granted Debtors' request to reopen. (*Schubert* ECF No. 63.) The next day, Debtors moved for an order that the trustee had abandoned the counterclaim. (*Schubert* ECF No. 64.) As the basis for that request, they maintained that they "did not schedule the claims in their petition" because they "did not become aware of the claims" until "late 2012," roughly six years after the bankruptcy closed. (*Id.* at 8.)

Two days later, Creditors initiated an adversary proceeding against Debtors. Count I of the complaint requested that the bankruptcy court declare that Debtors' counterclaim belonged to the estate, and Count II sought to enjoin Debtors from pursing the counterclaim in State court. (*Schubert* ECF No. 67; *Litton* ECF No. 1, at 12–17.) Creditors argued that the counterclaim was undisclosed and unadministered during the bankruptcy and must remain property of the estate. (*Id.* at 12–13.) Creditors sought an injunction based on res judicata, operation of the confirmation order under 11 U.S.C. § 1327(a), judicial and equitable estoppel, waiver, and voluntary payment. (*Id.* at 13–24.) Subsequently, Creditors moved for summary judgment on each claim. (*Litton*, ECF No. 3.) In response, Debtors moved to dismiss or, alternatively, for summary judgment, arguing that the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding because Creditors lacked standing. (*Litton*, ECF No. 17.)

On December 18, 2019, after holding a hearing in the adversary proceeding, the bankruptcy court: (1) granted Creditors' motion for summary judgment as to the declaratory judgment request—that the counterclaim remained property of the estate

5

until it was abandoned; (2) overruled Debtors' motion to dismiss or motion for summary judgment; and (3) dismissed without prejudice Creditors' request for an injunction on grounds of permissive abstention under 28 U.S.C. § 1344(c). (*Litton* ECF No. 28.) Then, in the core proceeding, the bankruptcy court held that the trustee abandoned the counterclaim, returning the claim to Debtors' possession. (*Schubert* ECF No. 77.)

The parties timely appeal and cross-appeal. (ECF No. 1; *see* ECF No. 6, ECF No. 8.)

## STANDARD OF REVIEW

The Court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *WesBanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.)*, 106 F.3d 1255, 1259 (6th Cir. 1997).

The Court reviews for abuse of discretion a bankruptcy court's order of abandonment and its decision to abstain. *See In re Blasingame*, 598 B.R. 864, 868 (B.A.P. 6th Cir. 2019) (abandonment); *McDaniel v. ABN Amro Mortg. Grp.*, 364 B.R. 644, 650 (S.D. Ohio 2007) (abstention); *see In re Harris*, 966 F.3d 439, 441–42 (6th Cir. 2020) (vacated on separate grounds) (abstention). An abuse of discretion "occurs if the [bankruptcy] court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012).

## STANDING

Debtors argue that the bankruptcy court erred by denying their motion to dismiss the adversary proceeding because Creditors lacked standing to bring it in the first place. (ECF No. 13, PageID #270–76.) In their view, Creditors are not "parties in interest" because their "pecuniary interests . . . were not, and never could have been, directly affected by the bankruptcy proceedings" because they "would not have received any money" had the trustee administered the counterclaim in bankruptcy. (*Id.*, PageID #271.) Creditors disagree, arguing that Debtors' reading of "party-in-interest" is "extremely narrow" and incorrect. (ECF No. 15, PageID #364.)

Article III, Section 2 of the Constitution grants federal courts jurisdiction over "cases" and "controversies." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). Article III standing applies "to adversary proceedings brought in bankruptcy courts, even though bankruptcy courts are not Article III courts themselves." *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 698 F. App'x 300, 303 (6th Cir. 2017) (citing *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 852–54 (6th Cir. 2002)). To have constitutional standing, the plaintiff must establish that: (1) it suffers "an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there is a causal connection between the injury and the conduct fairly traceable to the challenged action; and (3) it is likely, as opposed to speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, Creditors do not raise a generalized grievance with Debtors. They assert a particularized injury traceable to Debtors: that abandonment will subject them to

7

Debtors' counterclaim and a potential adverse judgment in State court. The bankruptcy court can redress that injury by enjoining Debtors from pursuing those claims. So long as Litton Loan, Ocwen, and Chase are parties in interest, they have standing. *See In re Malsch*, 417 B.R. 458, 460 (Bankr. N.D. Ohio 2009).

Debtors argue that Creditors are not parties-in-interest to the bankruptcy because they do not have a pecuniary interest in and are not affected by that proceeding. (ECF No. 13, PageID #270.) "The phrase 'party in interest,' although utilized in forty-six different sections of the Bankruptcy Code and well over thirty Bankruptcy Rules, is not actually defined" in either place. *In re Citi-Toledo Partners II*, 254 B.R. 155, 162 (Bankr. N.D. Ohio 2000). "Absent a precise or universal definition, the meaning of 'party in interest' depends on the context in which it is used." *Zipkin Whiting Co., LPA v. Barr (In re Felix)*, 825 F. App'x 365, 367 (6th Cir. 2020) (cleaned up). In *Felix*, the Sixth Circuit endorsed the view that a "party in interest" is "an expandable concept depending on the particular factual context in which it is applied, such as a party that has an actual pecuniary interest, one who has a practical stake in the outcome, or those who will be impacted in any significant way by the matter." *Id.* (quotation omitted) (citing *In re Morton*, 298 B.R. 301, 307 (B.A.P. 6th Cir. 2003)).

Under the Sixth Circuit's expansive reading, Litton Loan, Chase, and Ocwen are all parties in interest. First, they were involved with and directly affected by the bankruptcy proceedings. Litton Loan filed a proof of claim on behalf of Bank One, which Debtors' bankruptcy plan satisfied (*Schubert* ECF No. 2), and the confirmation

plan bound both Litton Loan and Bank One, which were involved in the payment and disposition of the loan at issue. (*Schubert* ECF No. 14.) Chase and Ocwen also have a sufficient stake in the outcome of the bankruptcy. Ocwen is in privity with Litton Loan as its parent company; Chase is in privity with Bank One as its successor. (ECF No. 9-1, ¶ 3, PageID #102.) Further, they are all defendants to the counterclaim in State court. (*Id.*, ¶ 32, PageID #106–07; *see also id.*, PageID #122–38.) Therefore, Litton Loan, Ocwen, and Chase each have standing.

## ANALYSIS

Creditors argue that the bankruptcy court improperly (1) granted Debtors' motion to abandon in the core proceeding, and (2) dismissed Creditors' claim for injunctive relief in the adversary proceeding. (ECF No. 9, PageID #61.)

### I. Abandonment of the Counterclaim

Because Debtors failed to schedule their counterclaim during the bankruptcy proceedings, Creditors assert that the counterclaim remains property of the estate, precluding Debtors from pursuing their claims after the bankruptcy closed. (*Id.*, PageID #77–79.) Ultimately, Creditors argue that the bankruptcy court misapplied the law by stating that the court was "compelled" by 11 U.S.C. § 554(d) to grant Debtors' motion to abandon such that they could pursue their counterclaim. (*Id.*) In part, the Court agrees.

#### I.A. Abandonment Under the Statutory Fail-Safe

Filing for Chapter 13 bankruptcy under 11 U.S.C. §§ 1301–1330 permits a debtor with regular income to adjust and repay debt. At the commencement of a bankruptcy case, an estate is created and becomes the owner of all of the petitioners'

9

property, including claims or "choses-in-action" that accrued before the bankruptcy petition. *See Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012); *see* 11 U.S.C. § 541(a); *Darrah v. Franklin Credit (In re Darrah)*, 337 B.R. 313, 316 (Bankr. N.D. Ohio 2005) *(*citing *In re Four Star Constr. Co.,* 151 B.R. 817, 819–20 (Bankr. N.D. Ohio 1993)). "Absent abandonment, only the Trustee may bring" a claim; the debtor "has no standing to pursue it alone." *Auday*, 698 F.3d at 904

In this bankruptcy process, the debtor must "disclose any potential claim as an asset to the bankruptcy court in a schedule of assets and liabilities." *Davis v. Fiat Chrysler Autos. U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018); *see* 11 U.S.C. § 521. This disclosure obligation lies "at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Davis*, 747 App'x at 314 (cleaned up). A debtor's failure to disclose a known potential claim in a bankruptcy proceeding is "equivalent to a statement that there were no such claims." *Id.* (quoting *Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012)). Put more technically, Section 554 of the bankruptcy code has "a 'fail-safe' provision that ensures property which the debtor fails to schedule and which the trustee does not administer remains within the estate." *In re DeGroot*, 484 B.R. 311, 319 (B.A.P. 6th Cir. 2012) (citing *Mele v. First Colony Life Ins.*, 127 B.R. 82, 86 (D.D.C. 1991)); 11 U.S.C. § 554(d). Therefore, potential claims that a debtor does not properly schedule are inherently unadministered and "remain[] property of the estate in perpetuity." *Darrah,* 337 B.R. at 316 (citing 11 U.S.C. §§ 554(c), (d)).

Section 554 also provides for abandonment of property of the estate. There are three types of abandonment under Section 554, only one of which matters here. Subsection (d), the fail-safe provision, provides: "Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d); *see also In re DeGroot*, 484 B.R. at 318. Resolution of this issue turns on the prefatory phrase "unless the court orders otherwise." Although scant case law defines the method by which a bankruptcy court can "order otherwise," courts agree that the phrase grants bankruptcy courts discretion to effect abandonment. *Id.* at 320–21 (collecting cases).

### I.B. The Bankruptcy Court's Discretion

Debtors claim that they did not list the counterclaim against Creditors in their petition because they "were unaware of their claim until discovery in the state court foreclosure action." (ECF No. 13, PageID #266.) But Debtors' counterclaim accrued before they filed for bankruptcy. Bank One and Litton charged Debtors the late fees before Debtors filed for bankruptcy, and Bank One later listed those late fees in its proof of claim. (ECF No. 9-1, ¶1, PageID #104.) Therefore, because the counterclaim was ripe and a potential claim when Debtors filed their bankruptcy petition, it remains part of the estate absent a court order under Section 554(d). On appeal, then, the question is whether the bankruptcy court abused its discretion when it ruled that Section 554(d) "compelled" it to grant Debtors' motion to abandon. (ECF No. 9, PageID #77–79.)

At the December 2019 hearing, the bankruptcy court granted Debtors' motion for abandonment, explaining that "the statute for abandonment is pretty straight

11

forward in 554." (ECF No. 14-4, PageID #314–15.) It determined that "if [the counterclaim is] property of the estate and the Trustee's not interested in pursuing it, *I think I have no choice* but to grant the motion for abandonment." (*Id.* (emphasis added.)) Creditors argue that the bankruptcy court abused its discretion because its conclusion that Section 554 compels abandonment misstates the law. (ECF No. 9, PageID #79.)

The Court agrees. Nothing in Section 554 compels a court to abandon the counterclaim. In fact, both the statute and case law expressly state that the court has discretion under Section 554(d) to grant or deny a motion to abandon. Nonetheless, the court's error was harmless under Bankruptcy Rule 9005 of the Federal Rules of Bankruptcy Procedure. Rule 9005 incorporates Rule 61 of the Federal Rules of Civil Procedure, which states that "[u]nless justice requires . . . no error by the court . . . is grounds for . . . disturbing a judgement or order . . . that does not affect any party's substantial rights." Fed. R. Civ. P. 61.

Creditors argue that the bankruptcy court violated their substantial rights because, had the court interpreted Section 554(d) properly, Debtors' counterclaim would forever remain with the estate, preventing the Debtors from enjoying "a windfall at the expense of Appellant." (ECF No. 9, PageID #79.) But that is not the case. Indeed, Creditors have a substantial right in Debtor's property becoming part of the estate, but they do not have a substantial right in that property remaining part of the estate in perpetuity. That is, they do not have a right in the bankruptcy court's denial of a motion to abandon. Had the bankruptcy court properly stated the law, the

12

record makes clear that the outcome would be no different. The bankruptcy court was within its discretion under Section 554(d) when it granted Debtors' motion, and the record reflects that the court premised its decision on the facts that (1) the trustee did not object to Debtors' motion, and (2) the counterclaim at issue was still in front of the State court. (ECF No. 14-4, PageID #321–22.) Though the bankruptcy court misstated the law, its error was harmless.

## II. Permissive Abstention

Creditors argue that the bankruptcy court improperly dismissed Count II of their complaint under the 28 U.S.C. § 1334(c). (ECF No. 9., PageID #85–96.) This issue raises the questions whether the Court can review the bankruptcy court's decision to abstain and, if so, whether the bankruptcy court abused its discretion by abstaining. The Court addresses each in turn.

### II.A. Appellate Jurisdiction

District courts have jurisdiction to review "final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings." 28 U.S.C. § 158(a). "By providing for appeals from final decisions in bankruptcy 'proceedings,' as distinguished from bankruptcy 'cases,' Congress made 'orders in bankruptcy cases . . . immediately appealable if they finally dispose of discrete disputes within the larger bankruptcy case.'" *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020) (cleaned up) (quoting *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015)). In the bankruptcy context, finality "is considered in a more pragmatic and less technical way." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) (quotation omitted). "An order granting summary judgment is a final order

13

for purposes of appeal." *In re Wicheff*, 215 B.R. 839, 840 (B.A.P. 6th Cir. 1998) (citation omitted).

Here, the bankruptcy court granted summary judgment on Count I for Creditors but "dismissed without prejudice [Count II, Creditors' request for an injunction,] based on permissive abstention." (ECF No. 14-2.) Therefore, the bankruptcy court's abstention under 28 U.S.C. § 1334(c)(1) constitutes a final appealable order. *See Antioch Co. Litig. Tr. v. Hardman*, No. 3:09-cv-445, 2010 WL 11639788, at *3 (S.D. Ohio July 29, 2010) (collecting cases); *cf., e.g.*, *In re Romanzi*, No. 3:09-cv-445, 2017 WL 1130091, at *2–3 (E.D. Mich. Mar. 27, 2017) (discussing case law holding that orders *denying* abstention are "clearly interlocutory" because such an order does not resolve an entire claim).

Debtors argue that 28 U.S.C. § 1334(c)(1) precludes the Court from reviewing the bankruptcy court's abstention. Section 1334(c)(1) states that "[a]ny decision to abstain or not to abstain made under subsection (c) . . . is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title . . . ." But Section 1334(c)(1) applies only to the Court of Appeals. The Court's jurisdiction vests under Section 158(a), not Sections 158(d), 1291, or 1292. *See* 28 U.S.C. § 158. Therefore, the Court has jurisdiction to review the bankruptcy court's decision to abstain.

### II.B. The Bankruptcy Court's Decision to Abstain

When deciding permissive abstention, the bankruptcy court considers thirteen factors:

1. the effect or lack of effect on the efficient administration of the estate if a court abstains;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficulty or unsettled nature of the applicable state law;

4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7. the substance rather than form of an asserted "core" proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. the burden of [the] court's docket;

10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. the existence of a right to a jury trial;

12. the presence in the proceeding of nondebtor parties; and

13. any unusual or other significant factors.

*Butler v. Cortland Sav. & Banking Co. (In re Butler)*, No. 20-1050, 2020 WL 4809902, at *2 (Bankr. N.D. Ohio Aug. 3, 2020) (citing *Parker v. Nationwide Mut. Ins. Co. (In re Duran)*, 586 B.R. 7, 10–11 (Bankr. N.D. Ohio 2018)). The court need not consider each factor, and no one factor is dispositive. *See id.*

Here, the bankruptcy court explained that the State court was the proper court in which to litigate Creditors' defenses. (ECF No. 14-4, PageID #320–24.) It noted that the affirmative defenses were part and parcel of the State claims and subject to

15

the Ohio Rules of Civil Procedure. (*Id.*, PageID #322.) Additionally, the bankruptcy court reopened the bankruptcy to decide the discrete issue of abandonment. Because factors one, two, three, seven, eight, ten, and thirteen favor abstention, the bankruptcy court acted within its discretion by permissively abstaining.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's denial of Debtors' motion to dismiss, **AFFIRMS** the order granting Debtors' abandonment motion, and **AFFIRMS** the bankruptcy court's decision to abstain from deciding count two of the Creditors' complaint.

**SO ORDERED.**

Dated: September 22, 2021

                                         J. Philip Calabrese
                                         United States District Judge
                                         Northern District of Ohio